UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| AMANDA FOSTER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DELLS NURSING AND REHAB CENTER, INC.,<br><br>　　　　　Defendant. | 20-4150<br><br><br>COMPLAINT WITH REQUEST FOR TRIAL BY JURY |

COMES NOW Amanda Foster, the Plaintiff named above, and for her Complaint against Defendant states and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1. This employment discrimination action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Pregnancy Discrimination Act.

2. Amanda Foster ("Foster") brings additional claims under the South Dakota Human Relations Act, S.D. Stat. § 20-13-1 et seq., and South Dakota common law. Supplemental jurisdiction is proper for such claims under 28 U.S.C. § 1367.

3. Foster is an adult resident of Colton, South Dakota.

4. Dells Nursing and Rehab Center, Inc. is a South Dakota corporation doing business as a long-term care facility in Dell Rapids, South Dakota. It employs approximately 60-75 full and part-time employees.

5. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred within the Southern Division of the District of South Dakota.

6. Foster was denied an interview and a promotion in October 2019 and timely filed a charge of Discrimination with the EEOC. She received a Right to Sue on July 28, 2020.

## FACTUAL ALLEGATIONS

7. In March 2018, Foster, who is a registered nurse, applied for a job at Dells Nursing and Rehab Center, Inc. ("the employer") as a day shift nurse in its long-term care facility.

8. On April 16, 2018, after an interview, the employer hired Foster.

9. After she was hired, Foster provided the employer with a release so it could obtain a physical to verify her capacity to perform the job as a charge nurse.

10. The employer used its release to obtain a copy of Foster's gynecological records from the Sanford's Maternal-Fetal Medicine Clinic, and it maintained these records with Foster's personnel records. These records provided the employer with extensive and highly personal information about Foster's reproductive and gynecological health history which has no bearing on her ability to perform the duties of her position as a charge nurse.

11. The employer did not obtain a physical related to the physical demands of Foster's duties as a nurse.

12. The employer also obtained a copy of a September 18, 2018 Referee's report about a child support issue between Foster's spouse and his former spouse relating to the financial support of their child. Foster was not a party to that matter and was not obligated to pay support for her spouse's child with another person. Nonetheless, the employer kept of a copy of these legal pleadings with Foster's personnel records.

13. A performance evaluation dated November 2018 uniformly rated Foster's performance as above-average. Her only rating of "average" was for willingness to work, where it was documented that she did not "pick up extra often, but that is OK and understood." The entirely positive evaluation concluded: "[Foster] is an asset to have at DNRC."

14. Between the November 2018 performance evaluation and her termination, Foster

received no disciplinary warnings or counseling about job performance.

15. In July 2019, Foster informed the employer that she would be applying for FLMA in August because of she was nearing the conclusion of her pregnancy.

16. Foster returned to her position at the termination of her FLMA leave in October 2019.

17. On or about October 3, 2019, the employer's Director of Nursing announced that she was leaving the facility.

18. The employer advertised the Director of Nursing position.

19. The Director of Nursing position would have been a pay promotion for Foster.

20. Foster possesses the qualifications to be a Director of Nursing as she has a Bachelor of Science degree and five years of experience as a nursing supervisor.

21. Foster submitted her resume as her application.

22. On or about October 8, 2019, Foster met with the employer's interim Administrator Sam Van Voorst ("Van Voorst") to explain her interest in applying for the Director of Nursing position. Van Voorst immediately responded to her inquiry about the job by saying, "I understand you are a new mom." In the conversation that followed, Van Voorst did not discuss Foster's above-average performance or her qualifications and instead stated that the Director of Nursing is a "hard job" and he remarked at least twice more that he knew that Foster had children and that children "are a lot of work." Van Voorst concluded his remarks by stating that if Foster still wanted to apply for the position, she should submit her resume. He added that if she had any doubts, she should not submit her resume.

23. On or about October 15, 2019, when Foster had not heard anything further about the open position, Foster asked Van Voorst if he had received her resume. He asked her to come

into his office where Foster observed her resume sitting on his desk. Van Voorst told Foster that "right now we will table this," and he took her resume off his desk and set it on a shelf. He then told her that the position had been offered to someone else and he represented that the employer was waiting to hear if this person accepted the position.

24. On October 17, 2019, Foster attended meetings with the other facility nurses, staff and the owner of the facility. One of the meetings that Foster attended was a meeting with Van Voorst and the other nurses. At this meeting, Van Voorst announced that all of the nurses would be dividing up the duties of the Director of Nurses position. He explained that this was because the person who had been offered the Director of Nursing position had declined the job. During this meeting, Foster stated that she had applied for the position but had not been interviewed. Van Voorst ignored Foster's statement and stated to the entire group: "We will see if any of you stand out as a leader."

25. Immediately after the meeting with the nurses and staff, Foster sought out the facility's owner Chad Stroschein and reported to him that she was upset that Van Voorst had repeatedly referred to her family status when she had talked to him about her application for the Director of Nursing position and that he had tabled her application without interviewing her.

26. After her meeting with Stroschein, Foster saw Strochein pull Van Voorst into another meeting. After that meeting concluded, Van Voorst approached Foster and told her that she would "probably" be given the job title of Director of Nursing but that she would not receive any pay increase with the title. He stated that he had met with the management team and that they were indifferent about whether she had the title of Director of Nursing.

27. Foster was never interviewed for the position of Director of Nursing.

28. Foster was never named or hired as the employer's interim Director of Nursing or its

4

actual Director of Nursing.

29. Frustrated about her supervisor's focus on her family status in the hiring process and the employer's refusal to interview or hire her for the open Director of Nursing position, Foster started looking for a different position.

30. On or about October 25, 2019, Foster gave a professional notice that she intended to find another position.

31. On or about November 1, 2019, Van Voorst called Foster into a meeting and stated that he did not want her to think that she did not get an interview for the Director of Nursing position because she was "a mother." Foster responded that she believed her status as a parent was a factor because Van Voorst had repeatedly commented upon it.

32. Van Voorst then claimed that Foster had not gotten an interview because of her "attitude." Foster responded that she had never been counseled about "attitude" and that her performance evaluations had all been positive.

33. Van Voorst then claimed that Foster had not been interviewed because there had been a "collective" decision not to have a first-round interview with internal candidates.

34. Despite Van Voorst's representations about internal applicants, Foster knew at least one internal applicant who had received an interview in the first round of interviews.

35. The Director of Nursing position remained unfilled for a significant period of time after Foster applied and was denied an interview.

36. Foster left her nursing position with the employer because of the discriminatory treatment she experienced in the Director of Nursing hiring process.

## COUNT ONE
### Sex/Pregnancy Discrimination in Hiring
### in violation of Title VII

37. Foster incorporates the foregoing paragraphs by reference.

38. Title VII provides, in part, that it is an unlawful employment practice for an employer to "fail or refuse to hire … any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex."

39. By virtue of the Pregnancy Discrimination Act of 1978, pregnancy-related discrimination in the hiring process is a violation of Title VII.

40. Defendants conduct described herein violations 42 U.S.C. § 2000e-2.

41. Foster's pregnancy and her status as a mother were motivating factors in the Defendant's refusal to interview her for an open position for which she was qualified.

42. Defendant's administrator expressed a bias against women with children, including but not limited to, ignoring Foster's positive employment history with the employer and focusing instead on her maternity leave and status as a "new mom," expressing his belief that children are time-consuming, and suggesting that Foster should reconsider her application for such a "hard" job because of her family obligations.

43. Defendant also documented and papered Foster's personnel records with references and records relative to her status as a parent.

44. Defendant did not deny that Foster has the qualification for the Director of Nursing position.

45. Foster's supervisor provided at least three different reasons for the employer's refusal to interview or hire Plaintiff for its Director of Nursing position, all of which are pretextual.

46. As a result of Defendant's conduct, Foster has suffered and will continue to suffer past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation and other damages in an amount in excess of $75,000.

47. The above-alleged acts were committed with reckless or deliberate disregard for Foster's rights.

## COUNT TWO
### Sex discrimination in violation of the South Dakota Human Relations Act

48. Foster incorporates the foregoing paragraphs by reference.

49. The South Dakota Human Relations Act of 1972 makes it an unfair or discriminatory practice to refuse to hire an applicant because of sex.

50. Defendant's conduct described herein violates SDCL § 20-13-10.

51. As a result of Defendant's conduct, Foster has suffered and will continue to suffer past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation and other damages.

52. The above-alleged acts were committed with reckless or deliberate disregard for Foster's rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Amanda Foster prays for judgment against the Defendant Dells Nursing and Rehab, Inc. as follows:

A. That the practices of Defendant complained of in this Complaint be determined to violate the rights secured to Plaintiff under Title VII and the South Dakota Human Relations Act;

B. For all relief available to Plaintiff, including compensatory relief and damages arising

7

from the loss of past and future income, benefits, emotional distress, physical injury and other damages, with interest on such amounts;

C. For a ruling permitting Plaintiff to submit a request for punitive damages to the jury;

D. For an award of Plaintiff's reasonable costs, disbursements and attorney fees incurred herein;

E. For such other and further relief available; and

F. For a trial by jury.

Dated this 19th day of October, 2020.

JOHNSON POCHOP & BARTLING LAW OFFICE, LLP

_____
Stephanie E. Pochop
405 Main St. | PO Box 149
Gregory, SD 57533
(605) 835-8391
Stephanie@rosebudlaw.com
*Attorney for Plaintiff Amanda Foster*

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
AMANDA FOSTER

**DEFENDANTS**
DELLS NURSING AND REHAB CENTER, INC

**(b)** County of Residence of First Listed Plaintiff: Colton, South Dakota
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Minnehaha
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Stephanie E. Pochop, of Johnson Pochop & Bartling, P.O Box 149, Gregory, SD 57533  (605) 835-8391

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964, at 42 U.S.C 2000e et seq and the Pregnancy Discrimination Act

Brief description of cause:
Sex Discrimination

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE 10/14/20
SIGNATURE OF ATTORNEY OF RECORD
Stephanie E. Pochop

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
 (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
 (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.